# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 21, 2014

## ANTONIO WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 101833      Mary B. Leibowitz, Judge**

_____

**No. E2014-00419-CCA-R3-PC-FILED-DECEMBER 30, 2014**

_____

Antonio Williams ("the Petitioner") pleaded guilty to three counts of possession with intent to sell a Schedule II controlled substance within a drug-free zone and agreed to a revocation of probation on a prior sentence.  Pursuant to his plea agreement, the Petitioner received a total effective sentence of ten years to be served at 100%.  In this appeal from the denial of post-conviction relief, the Petitioner contends that the post-conviction court erred in finding: (1) that his plea was intelligently and voluntarily made; and (2) that trial counsel's performance was not deficient.  After a thorough review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR. J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Antonio Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Randy E. Nichols, District Attorney General; and Sean McDermott, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This is a post-conviction proceeding in which the Petitioner, Antonio Williams, claims that he was deprived of his constitutional right to effective assistance of counsel and that his guilty plea was involuntary and unknowing. The Petitioner pleaded guilty to possession with intent to sell less than point five grams of a Schedule II controlled substance within a drug-free zone in Counts 1 and 2 of Case No. 101586 and to possession with intent to sell point five grams or more of a Schedule II controlled substance within a drug-free zone in Count 3. In the same proceeding, the Petitioner submitted to a revocation of probation on a prior sentence. Pursuant to the plea agreement, the Petitioner received sentences of ten years as a Range III offender to be served at 100% in both Counts 1 and 2, and an eight-year sentence as a Range I offender to be served at 100% in Count 3. The three sentences were ordered to run concurrently with each other and with a four-year sentence on the revocation of probation.

The Petitioner filed a *pro se* petition for post-conviction relief. Post-conviction counsel was appointed, and an amended petition was filed alleging ineffective assistance of counsel and an involuntary and unknowing plea. After a hearing, the post-conviction court entered a written order denying relief. The Petitioner then filed a timely notice of appeal.

### *The Plea Colloquy*

Counts 1 and 2 of Case No. 101856 were based upon undercover drug transactions in which the Petitioner was recorded selling drugs, and Count 3 was based on drugs found during a search of the Petitioner's residence. All three drug offenses occurred within 1,000 feet of a library. Based upon these offenses, the State filed a petition to revoke the Petitioner's probation.

During the plea colloquy, the Petitioner was informed that his probation was being revoked and that the three new drug convictions would run concurrently with his revocation of probation. The Petitioner acknowledged that he understood the plea and that he was being sentenced to an effective ten years to be served at 100%. The Petitioner stated that he had reviewed the plea waiver with his attorney and that he understood its contents. He further agreed that he understood that by pleading guilty he would be giving up certain rights, including his right to a trial by jury. Additionally, the Petitioner stated that he had a bachelor's degree from Clemson University.

Notably, the Petitioner, through his attorney, explained to the court that he was not pleading guilty to any offense that may have been related to the traffic stop during which the police arrested him; he was only pleading guilty to the offenses stemming from the

undercover drug buys and the evidence found at his residence when the police executed a search warrant.[1] He further stated that he was satisfied with trial counsel's performance.

*Post-Conviction Relief Hearing*

The Petitioner testified that, prior to the plea colloquy, trial counsel visited him in the Knox County detention facility. During that visit, trial counsel explained that the Petitioner was facing multiple charges for multiple drug offenses. When asked if they discussed possible outcomes of the case, the Petitioner testified that he asked trial counsel if he would be able to go back on probation and trial counsel stated that he would talk to the district attorney and "get back" with the Petitioner before court. The Petitioner claimed that he did not know his case involved the drug-free zone sentencing enhancement until he heard the sentence announced in court during the plea colloquy. However, when questioned further, the Petitioner testified that trial counsel may have explained to him that drug-free zone sentencing required the Petitioner to serve 100% of his sentence, but he was not sure.

After meeting with trial counsel, the Petitioner wrote three letters in which he asked trial counsel, the court, and the district attorney to reinstate his enhanced probation. Despite his request for leniency, the Petitioner's letter to trial counsel indicated that he knew he was unlikely to be placed back on probation.

The Petitioner testified that he next saw trial counsel when he was asked to sign the plea waiver. He testified that he could not recall exactly what they discussed, but he believed they discussed the amount of time he would be sentenced to serve. However, he maintained that he was not aware that he would not be placed back on probation until he was sentenced by the trial court.

The Petitioner stated that, had trial counsel explained to him that pleading guilty meant he would serve 100% of a ten-year sentence, he would have insisted on taking his case to trial. He did not understand at the time he entered his guilty plea that the drug-free zone sentencing enhancement required him to serve 100% of his sentence in custody. However, the Petitioner explained that he did not voice any concerns when the trial court announced his sentence because he "felt like [his] back was against the wall." Additionally, he testified that he told the trial judge he understood the plea agreement because he felt that he had no other choice.

---

[1] Before executing the search warrant at the Petitioner's residence, police observed the Petitioner leaving the residence. They followed the Petitioner and conducted a traffic stop. When the Petitioner exited the vehicle, the officers noticed a small bag of crack cocaine, which appeared to be covered in saliva, on the ground. When discussing the plea agreement with his attorney, the Petitioner insisted on ensuring that no plea would be related to the evidence discovered during the traffic stop. Counsel voiced the Petitioner's concern during the plea colloquy.

On cross-examination, the Petitioner admitted that he did not have trouble reading or writing, but he claimed that he had some trouble with comprehension. Further, he stated that he did not have any disability that would prevent him from understanding someone in a normal conversation. Additionally, the Petitioner testified that he had served in the U.S. Army as a Staff Sergeant. He agreed that his training in the Army taught him how to communicate effectively with commanding officers. He also denied that he had any mental health issues requiring treatment.

The Petitioner admitted that he had entered guilty pleas on two prior occasions, one of which involved a drug-free zone offense. The Petitioner admitted that his attorney in that case explained what the drug-free zone enhancement meant. Finally, the Petitioner admitted that he told the court that he understood his sentence during the plea colloquy.

Trial counsel testified that he represented the Petitioner on both the revocation of probation and the drug charges. Trial counsel stated that, when he was first appointed to represent the Petitioner for his revocation of probation, he explained to the Petitioner that he was going to serve some time in prison. Once trial counsel learned about the new drug charges, his goal was to minimize the amount of time the new drug charges would add to the Petitioner's sentence.

Trial counsel testified that he reviewed the discovery he received for the Petitioner's drug charges and discussed the evidence with the Petitioner, both at court and during a meeting at the detention facility. During the detention facility meeting, trial counsel told the Petitioner that his goal was to negotiate a plea that minimized the amount of time the Petitioner would have to spend in custody. The possibility of the Petitioner's being placed back on probation was not discussed.

Trial counsel also testified that his notes from the detention facility meeting indicated that he explained that any sentence the Petitioner agreed to would carry a sentence with a 100% service rate under the drug-free zone law. Trial counsel testified that his notes also showed that he discussed the possibility of getting concurrent sentences if the Petitioner pleaded guilty. The Petitioner indicated he understood what was discussed and agreed to enter a guilty plea.

On the date of the plea colloquy, trial counsel explained the plea agreement and sentence to the Petitioner. He handwrote the plea agreement on the plea waiver for the Petitioner to review. Before the Petitioner signed the waiver, trial counsel again told the Petitioner that he would serve an effective ten-year sentence at 100%. The Petitioner indicated that he understood. The agreement was announced in court, and the Petitioner told the judge that he understood the agreement. At no time did the Petitioner indicate that he did not understand the plea agreement.

On cross-examination, trial counsel stated that he had a "fairly firm" offer from the district attorney to discuss with the Petitioner during their meeting at the detention facility, but some work still needed to be done on the case. At that time, he explained to the Petitioner that, based on his criminal history, he would likely serve twelve to twenty years in prison at 100%. The following day, trial counsel met the Petitioner at court and told him that the district attorney had offered a plea of ten years at 100%. He recalled that he told the Petitioner that it was a reasonable offer.[2]

Trial counsel noted that the letters he received from the Petitioner were postmarked April 29, 2013–a few days after he met with the Petitioner at court to explain the plea offer. He agreed that all the letters listed reasons why the Petitioner should be placed back on probation, but trial counsel opined that he did not know anyone at the county jail who would not ask the court to put them on probation. Trial counsel stated that he did not discuss the letters with the Petitioner after he received them, but he did note that he went over the plea agreement in detail with the Petitioner before his plea colloquy and explained that the Petitioner would serve a ten-year sentence at 100%.

The post-conviction court denied relief holding that the Petitioner understood his plea and entered into it freely, voluntarily, and knowingly. The court concluded it was clear from the evidence that the Petitioner understood that he would be serving 100% of his sentence in custody. Further, the post-conviction court stated that trial counsel's representation was not deficient, and the Petitioner had not shown that the outcome of his case would have been different if he had taken it to trial.

## Analysis

In order to prevail upon a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)). As such, we review a trial court's findings of fact under a *de novo* standard with a presumption that those findings are correct unless otherwise proven by a preponderance of the evidence. Id. (citing Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997)). The trial court's conclusions of law are reviewed "under a purely *de novo* standard, with no presumptions of correctness . . . ." Id.

When reviewing the trial court's findings of fact, this Court does not reweigh the evidence or "substitute [its] own inferences for those drawn by the trial court." Id. at 456.

---

[2] Trial counsel also noted that he briefly explained the fact that the Petitioner would be pleading as a Range III offender in order to get a ten-year sentence but that such information had little to no meaning to the Petitioner because he would have to serve his sentence at 100% regardless of his offender classification.

Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." Id. (citing Henley, 960 S.W.2d at 579).

*Ineffective Assistance of Counsel*

In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove two factors: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. Id.; Henley, 960 S.W.2d at 580; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689; see also Henley, 960 S.W.2d at 579.

As to the first prong of the Strickland analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." Henley, 960 S.W.2d at 579 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); see also Goad, 938 S.W.2d at 369. Therefore, in order to prove that counsel was deficient, the petitioner must demonstrate "that the counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688); see also Baxter, 523 S.W.2d at 936.

Even if counsel's performance was deficient, the deficiency must have resulted in prejudice to the defense. Goad, 938 S.W.2d at 370. Therefore, under the second prong of the Strickland analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Don Allen Rodgers v. State, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Crim. App. Apr. 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. See Hill, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." Id. at 59.

In this case, the Petitioner claims that trial counsel was deficient because he failed to explain that the plea agreement required the Petitioner to serve 100% of his sentence. The Petitioner asserts that, until he heard the sentence read aloud in court, he believed that he was going to be placed back onto enhanced probation. Had his counsel sufficiently explained the agreement, the Petitioner claims that he would have refused the plea and taken the case to trial. However, based on a review of the record, we conclude that counsel's performance was not deficient.

Trial counsel met with the Petitioner in the Knox County detention facility to discuss the charges against the Petitioner and the strength of his case. During that meeting, trial counsel explained that his goal was to try to negotiate a plea that would allow the Petitioner to serve the least amount of time possible. At the same meeting, counsel explained the sentence each charge could potentially carry and that any plea agreement would be a prison sentence with a 100% service rate, pursuant to the drug-free zone sentencing enhancement. Counsel also explained that if the Petitioner pleaded guilty, he could possibly get a concurrent sentence for all of his charges. The Petitioner indicated that he understood. According to trial counsel, the possibility of probation was not discussed at this meeting.

The next day, trial counsel met with the Petitioner at court and informed the Petitioner that the district attorney was offering a plea agreement in which the Petitioner would serve an effective ten-year sentence at a 100% service rate. After hearing the offer, the Petitioner agreed to plead guilty.

On the day of the plea colloquy, trial counsel again explained the details of the plea agreement before bringing the Petitioner into court. At this meeting, trial counsel detailed the terms of the plea agreement in his own handwriting and told the Petitioner that he was agreeing to an effective ten-year sentence at a 100% service rate pursuant to the drug-free zone sentencing requirements. The Petitioner indicated that he understood. The plea agreement that was announced in court was identical to the plea agreement trial counsel had explained. The Petitioner told the court he understood the agreement and pled guilty to all three drug charges and submitted to the revocation of probation. At no point did the Petitioner indicate–to his counsel or to the court–that he did not understand the agreement or that he wanted to take his case to trial. Based on these facts, we conclude that the post-conviction court did not err when it held that trial counsel's performance was not deficient.[3]

*Voluntary and Intelligent Plea*

The Petitioner also argues on appeal that trial counsel's alleged deficiencies rendered his guilty plea involuntary and unknowing. We do not agree.

---

[3] Because the Petitioner failed to show that his counsel's performance was deficient, we need not reach the issue of whether any deficiency prejudiced his defense.

When reviewing a guilty plea, this Court looks to both the federal standard as announced in the landmark case Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard as announced in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by rule as stated in* State v. Wilson, 31 S.W.2d 189, 193 (Tenn. 2000). Don Allen Rodgers, 2012 WL 1478764, at *5. Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." Boykin, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decisions was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." Mackey, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Boykin, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship, 858 S.W.2d at 904; Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. Boykin, 395 U.S. at 244.

Further, statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conculsory allegations unsupported by specifics." Id. at 74.

In this case, the trial court conducted a thorough plea colloquy with the Petitioner, and the Petitioner stated that he understood the plea agreement. He has not alleged any facts, beyond his subjective belief that he would be placed back onto probation, to rebut the presumed veracity of his statements at the plea colloquy. Further, trial counsel testified that

he explained the plea agreement and drug-free zone sentencing enhancement to the Petitioner no less than three times, and each time the Petitioner indicated that he understood the agreement. Moreover, the Petitioner signed a plea waiver that contained the details of the plea agreement and sentence in trial counsel's own handwriting.

Additionally, the Petitioner wrote letters to trial counsel, the district attorney, and the trial court. In those letters, he stated, "I understand what I am facing" but that he hoped for leniency. The Petitioner also testified that he had previously pleaded guilty in criminal court on two different occasions. One of those previous charges included a drug-free zone sentencing enhancement, and the Petitioner testified that his attorney on that case explained how the drug-free zone enhancement would affect sentencing. Finally, the Petitioner testified, at both the plea colloquy and the post-conviction hearing, that he had a bachelor's degree and could read and write. Nothing in the record contradicts the post-conviction court's finding that the plea was voluntary and intelligent.

## Conclusion

For the aforementioned reasons, we affirm the judgment of the post-conviction court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE